YOUNG BROTHERS CONSTRUCTION
COMPANY, INC. and William Bittner,
a joint venture, Appellant,

v.

ROLLINS BURDICK HUNTER OF
ALASKA, INC., an Alaska
corporation, Appellee.

No. 5799.

Supreme Court of Alaska.

Oct. 15, 1982.

Rehearing Denied Feb. 25, 1983.

Patrick Owen, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Anchorage, for appellant.

Vincent Vitale and Natalie K. Finn, Law Offices of Vincent Vitale, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Chief Justice.

The main issue in this appeal is whether a co-venturer had authority to sign a promissory note which would bind the joint venture to pay a debt of insurance premiums. The trial court granted judgment in favor of the insurer, holding the joint venture jointly and severally liable for the entire amount of the note. We reverse.

In 1973, Donald, Herbert, John, and Jerry Young formed a partnership to engage in general construction in Alaska. In 1974, they formed a corporation called Young Brothers Construction Co., Inc., to engage in Alaskan construction projects requiring union labor. Both entities purchased all their business insurance through Rollins Burdick Hunter of Alaska, Inc. (RBH). In 1975, the corporation sought construction subcontracts which required performance and payment bonds beyond their financial means. To obtain the subcontracts, the corporation entered into a joint venture agreement with Mr. William Bittner, who was to provide the additional financial backing necessary to secure the bonds. The agreement expressly provided that the Young Brothers' corporation would be responsible for procuring the necessary insurance coverage for the joint venture. Mr. Jerry Young, as president of the corporation, obtained all the insurance for the joint venture, as well as for the other entities.

The joint venture was added as an additional insured to existing Young Brothers' policies and new policies were written for the joint venture when necessary. As was its custom, RBH kept a single, open account for these entities. RBH always billed, and

the Young Brothers always paid, in lump sum figures. At no time in the course of their relationship did either party request allocation of the insurance costs between entities or policies.

Mr. Bittner and the Young Brothers' corporation entered into a second joint venture agreement in April, 1976, for the purpose of completing a second construction project. This agreement was essentially the same as the first, with the Young Brothers providing the construction expertise and Mr. Bittner providing financial backing to bond the project.

RBH and the corporation continued their prior course of dealing regarding billing and payment of the Young Brothers' insurance account. Neither party requested allocation between the three entities or the insurance policies. Jerry Young continued to be responsible for the purchase of insurance for each of the three entities.

By the end of 1976, the Young Brothers' account with RBH was delinquent and remained so through 1978. Between 1974 and 1978, RBH had billed the Young Brothers a total of $140,000.00. By June, 1978, RBH had received approximately $94,000.00 in payments, leaving a shortfall of $46,683.83.

After several phone calls and meetings to negotiate its terms, RBH and Jerry Young signed a promissory note on June 6, 1978, in the amount of $46,683.83. The note provided that the partnership, corporation and joint venture would be jointly and severally liable for the debt and that the amount was to be paid, with interest, in monthly installments of $5,000.00. The note contained signature lines for each of the three specifically named entities and Jerry Young signed for each entity after reading the note.

Upon the Young Brothers' default, RBH brought this action on September 19, 1978. The three entities answered the complaint, and Mr. Bittner filed a third-party complaint to enforce the joint venture's promise to indemnify, made in both joint venture agreements. At trial, the corporation and partnership defaulted by failing to appear;

only the joint venture appeared to defend. Following a court trial, the superior court entered judgment for RBH, holding the joint venture jointly and severally liable on the debt, and in favor of Mr. Bittner on his claim for indemnity. The joint venture now appeals.

Prior to the execution of the promissory note, RBH had been provided with copies of the two joint venture agreements. Each contained the following provisions:

> The Joint Venture shall have the power to do everything necessary, proper, convenient or incidental to [its] purpose. The Joint Venture shall not engage in any other business or activity. [§ 1.2 of Exhibits 3 and 4]

> It is specifically understood and agreed between the venturers that this Joint Venture extends only to and is limited to the rights and obligations under this agreement. [§ 13 of Exhibit 3; § 12.1 of Exhibit 4]

> No party shall have the right to borrow money on behalf of the other party or to use the credit of the other party for any purpose unless the other party consents in writing. [§ 6.1 of Exhibit 3; § 5.1 of Exhibit 4]

The second joint venture project was completed by October, 1976. In addition, the undisputed testimony and evidence at trial reveals that the insurance policies which covered the joint venture's activities expired or were cancelled long before June 6, 1978, when Jerry Young signed the promissory note.

Under the circumstances, we conclude that Jerry Young had no authority, real, implied or apparent, to bind the joint venture to pay that portion of the overdue premiums which were not attributable to the joint venture's own insurance policies. AS 32.05.040. Accordingly, the judgment is REVERSED and REMANDED for a determination of the amount of insurance premiums attributable to the joint venture.[1]

---

1. This result makes it unnecessary for us to reach the other issues raised by appellant.